**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|                                          |   |                      |
|------------------------------------------|---|----------------------|
| **EDWARD R. HOLMES,**                    | ) |                      |
| **Plaintiff,**                           | ) |                      |
| v.                                       | ) | CIVIL NO. 3:09CV436  |
| **MICHAEL J. ASTRUE,** Commissioner of Social Security, | ) |        |
| **Defendant.**                           | ) |                      |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Edward R. Holmes, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner granting his applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI") as of December 31, 2007, but denying such benefits for any earlier period. The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations before December 31, 2007, but that he became disabled as of that date.

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 6) be DENIED; that Defendant's motion for summary judgment (docket no. 8) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on December 14, 2006, claiming disability due to back pain, glaucoma, a brain injury, arthritis, high blood pressure, and gout, with an alleged onset date of December 1, 2006. (R. at 126-34, 152.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 92-101.) On December 16, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 29-54.) On January 28, 2009, the ALJ issued a partially favorable decision, finding that Plaintiff became disabled as of December 31, 2007, but he was not disabled under the Act prior thereto where, based on his age, education, work experience and residual functional capacity, there were jobs he could have performed which existed in significant numbers in the national economy. (R. at 19-27.) The ALJ awarded Plaintiff SSI benefits as of December 31, 2007, but denied Plaintiff's application for DIB where the ALJ found that Plaintiff's date last insured was December 31, 2006. (R. at 27.) The ALJ issued an amended decision on March 17, 2009, granting Plaintiff's application for DIB as of December 31, 2007, based on his conclusion that Plaintiff's date last insured was actually December 31, 2007, not December 31, 2006. (R. at 13.)

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-5.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The

Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v.

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 21.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, hypertension, and various arthralgias/gouty arthritis, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 21-23.) The ALJ next determined that Plaintiff had the RFC to perform light work, provided he had the option to sit or stand at will, and was not required to perform postural activities more than occasionally. (R. at 23-25.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform his past relevant work as a food service worker and janitor because of the levels of exertion required

6

for each position.  (R. at 25.)  At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that prior to December 31, 2007, there were other occupations which existed in significant numbers in the national economy that Plaintiff could perform.  (R. at 25-26.)  Specifically, the ALJ found that Plaintiff could work as a small products assembler and router.  (R. at 26.)  Accordingly, the ALJ concluded that Plaintiff was not disabled before December 31, 2007, and was employable such that he was not entitled to benefits before that date.  (R. at 26-27.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law for the period from December 1, 2006 through December 31, 2007, or in the alternative, he seeks reversal and remand for additional administrative proceedings.  (Pl.'s Mot. for Summ. J.)  In support of his position, Plaintiff argues that: (1) the Appeals Council improperly characterized the ALJ's amended decision as "fully favorable;" and (2) the ALJ erred by failing to indicate the weight he gave to evidence of Plaintiff's high uric acid values and the steel plate and screws in Plaintiff's left ankle.  (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 3-7.)  Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 13-27.)

**1.     Plaintiff contends that the Appeals Council improperly characterized the ALJ's amended decision as "fully favorable."**

Plaintiff asserts that the Appeals Council improperly characterized the ALJ's amended decision as "fully favorable."  (Pl.'s Mem. at 3.)  The entirety of Plaintiff's argument is as follows.  The Plaintiff quotes the Appeals Council's decision, wherein the Appeals Council takes note of the ALJ's amended decision, and then the Plaintiff states, "[T]he ALJ's amended

7

decision, albeit titled 'fully favorable,' was not fully favorable. It is at R 10-13. It was less than fully favorable because it adopted December 31, 2007 as the onset date, whereas Mr. Holmes alleged an onset date of December 1, 2006." (Id.) Whether the Appeals Council characterized the ALJ's amended decision as "fully favorable" or "partially favorable" is a matter of semantics, and is not a proper basis for appeal inasmuch as it does not concern the legal standard applied or the substance of the decision.[6] See Gibson v. Atrue, 2009 WL 3757686 at *11 (D.S.C. Nov. 9, 2009) ("Reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (quoting Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004)).

2. **Plaintiff contends that ALJ failed to indicate the weight he gave to evidence of Plaintiff's high uric acid values and the steel plate and screws in Plaintiff's left ankle.**

Plaintiff next argues that the ALJ failed to indicate the weight he gave to evidence of a steel plate and screws in Plaintiff's left ankle and Plaintiff's high uric acid values. (Pl.'s Mem. at 4-7.) Specifically, Plaintiff identifies a February 5, 1995, x-ray of his left ankle that reveals a metal plate and seven screws, as well as the results of five lab tests for uric acid dating from January 12, 2005 to December 15, 2007. (Pl.'s Mem. at 5.) Plaintiff then states: "Even assuming that the ALJ was aware of these lab values and this x-ray finding, we are left to guess what functional significance he attached to this consistent objective confirmation of Mr. Holmes' complaints of pain on sustained walking and how the ALJ reconciled this objective evidence of

---

[6] The Court observes that the Plaintiff makes no argument that the ALJ erred in determining the Plaintiff's alleged onset date, or that the Appeals Council erred in declining to review the ALJ's decision. Rather, Plaintiff's only argument is that the Appeals Council improperly characterized the ALJ's amended decision as "fully favorable."

8

pain on walking with his conclusion that Mr. Holmes could perform light work." (Pl.'s Mem. at 6.)

Contrary to Plaintiff's assertion, the ALJ did not fail to address the Plaintiff's left ankle injury. Although the ALJ did not specifically refer to the x-ray from 1995, he recognized the Plaintiff's ankle injury and how it was affecting the Plaintiff during the time period relevant to his disability claim. Specifically, the ALJ found that "Some limitation of motion was noted at the left ankle. However, a peripheral joint evaluation did not reveal any erythema, swelling, localized increase in warmth, joint deformity, joint instability, or evidence of active inflamation." (R. at 23, 343.) Moreover, Plaintiff injured his ankle in 1995 and was able to work despite the impairment and the alleged pain through 2006, when he was laid off from his job and claimed that he became disabled. (R. at 142-43, 214.) Such evidence supports the ALJ's finding that Plaintiff could perform a modified range of light work prior to December 31, 2007.

Likewise, the ALJ did not fail to adequately address Plaintiff's gout. Although he did not expressly mention the five tests results cited by Plaintiff, the ALJ found that Plaintiff had gouty arthritis and that it was a severe impairment. (R. at 21-22.) Moreover, of the five test results identified by the Plaintiff, only two of those results were obtained during the time period relevant to his disability claim.[7] (R. at 263, 275, 297, 327, 409.) Additionally, as was true with the Plaintiff's ankle injury, the record reflects that the Plaintiff was able to work for a period of time despite his gouty arthritis until he was laid off from his job in 2006. (R. at 37-39, 143.) Such evidence supports the ALJ's finding that the Plaintiff could perform light work with additional

---

[7] The dates for the five tests are as follows: January 12, 2005; January 17, 2005; December 20, 2005; February 15, 2007; and December 15, 2007. (R. at 263, 275, 297, 327, 409.)

limitations prior to December 31, 2007.

In determining the Plaintiff's RFC, the ALJ considered each of the asserted impairments and the Plaintiff's subjective allegations of pain resulting from the impairments to the extent that he found the Plaintiff's allegations of pain to be credible. (R. at 24-25.) The ALJ noted that the Plaintiff had testified that he has arthritis and gout; that he cannot work because of back, ankle, leg, and foot pain; that rainy weather exacerbates his pain; that he does not have many good days; that the pain in his back, ankle, knees, and legs wakes him up once or twice per night; that walking is difficult; and that his pain medication is not completely effective. (R. at 24.) The ALJ then found that although the Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible prior to December 31, 2007. (R. at 24.) The ALJ found Plaintiff's allegations of pain to be lacking credibility for multiple reasons, including the fact that the Plaintiff's treatment had been conservative, that no device had been prescribed to assist the Plaintiff with ambulation, that radiography showed minimal signs, and that physical examinations showed full ranges of motion. (R. at 24.) Additionally, the ALJ noted that the Plaintiff's job ended when he was laid off, not because of an impairment, and thus, that the Plaintiff's assertion that he was unable to work because of his symptoms was thereby rendered less persuasive. (R. at 24.)

Inasmuch as the ALJ's RFC determination incorporated the impairments supported by the objective medical evidence in the record and Plaintiff's credible complaints, the Court recommends a finding that the ALJ's conclusions are supported by substantial evidence and application of the correct legal standards.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 6) be DENIED; that Defendant's motion for summary judgment (docket no. 8) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Richmond, Virginia
Date: April 27, 2010